## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

**JACQUELYN LEE BRADLEY,**

   **Plaintiff,**

**v.**                                            **Civil Action No. 3:17-cv-02978**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 16), Defendant's Brief in Support of Defendant's Decision (ECF No. 17) and Plaintiff's Reply to Defendant's Brief in Support of Defendant's Decision (ECF No. 20). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

Background

Claimant, Jacquelyn Lee Bradley, filed applications for DIB and SSI on August 9, 2012. Claimant alleged disability beginning June 21, 2012. The claims were denied initially on January 21, 2013, and upon reconsideration on March 29, 2013. Claimant filed a request for hearing on April 12, 2013. A hearing was held on July 9, 2014, in Charleston, West Virginia. An Administrative Law Judge (ALJ) presided over the hearing. The ALJ denied Claimant's applications on August 12, 2014. On September 12, 2014, Claimant requested a review of the ALJ's decision by the Appeals Council (AC). The AC granted Claimant's request for review on

1

July 6, 2015.  The AC vacated the ALJ's decision and remanded the case back to the ALJ for resolution of two issues: (1.) the failure to perform a special technique analysis despite the record showing that Claimant had a mental impairment and (2.) the lack of an adequate evaluation of the treating physician Elizabeth Young, M.D. (Tr. at 232).  A new hearing was held in Charleston, West Virginia, on December 1, 2015.  On December 23, 2015, the ALJ denied Claimant's applications.  On February 18, 2016, Claimant sought review of the ALJ's new decision by the AC.  On March 21, 2017, the AC denied Claimant's request for review of the new decision.  Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2017).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920.  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920.  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920.  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920.  If it does,

2

the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since June 21, 2012 (Tr. at 110). Claimant met the insured status requirements of the Social Security Act through March 31, 2017. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: lumbar degenerative disc disease/status post microdiscectomy. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 112). The ALJ found that Claimant can perform past relevant work as a Secretary for the City Police, Police Dispatcher and Data Entry Clerk (Tr. at 115). The ALJ stated "This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."[1] (*Id.*) On this basis, Claimant's application was denied (Tr. at 116).

_____

[1]The August 12, 2014 decision states that Claimant has a residual functional capacity to perform sedentary

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

---

work with the following limitations: She should never climb ladders, ropes or scaffolds. She is able to climb stairs and ramps, balance, stoop, kneel, crouch and crawl. She is limited to frequent operation of foot controls with both lower extremities. She should avoid all exposure to vibrations and unprotected heights. The claimant is limited to no more than occasional exposure to extreme cold. (*Id.*)

Claimant asserts that the ALJ improperly gave great weight to his prior decision pursuant to Acquiescence Ruling (AR) 00-1(4) (ECF No. 14-1). Claimant argues that because the AC vacated the ALJ's prior decision, the ALJ erred when he used his prior decision as further opinion evidence to support his decision. (*Id.*) Defendant asserts that AR 00-1(4) requires an ALJ to consider a prior finding of a claimant's residual functional capacity as evidence when adjudicating a subsequent disability claim. In the present case, the ALJ was not required to consider his own prior finding because he was not adjudicating a subsequent application; rather, he was adjudicating the same application that was remanded by the Appeals Council. However, Claimant has not explained how she was harmed by the ALJ's consideration of his own prior decision. The burden lies with Plaintiff to demonstrate harm from such error that would have changed the ALJ's decision, but she has not done so here. *Shinseki v. Sanders*, 556 U.S. 396, 409-10(2009); *see also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (remand not required if there is "no question that [the ALJ] would have reached the same result notwithstanding his initial error."). Absent some harm, remand is not warranted.

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on May 24, 1951.  She lives with her twenty-two year old granddaughter and a twelve year old granddaughter (Tr. at 154).  Claimant graduated from high school and took a few classes towards a criminal justice degree (Tr. at 155).

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

## Medical Record

In June 2012, Claimant saw Mathew Walker, M.D., an orthopedic surgeon, for evaluation of left leg pain (Tr. at 666). An MRI revealed degenerative disc disease at L5-S1 and a left L4-5 herniation with compromise of the left L5 nerve root (Tr. at 668). Dr. Walker recommended that Claimant undergo an L4-5 microdiscectomy which he performed on June 27, 2012 (Tr. at 662). Following surgery, Claimant returned to the hospital and was admitted for three days for pain control (Tr. at 588).  Dr. Walker discharged her with a restriction on heavy lifting. (*Id.*)

On July 12, 2012, Claimant saw Dr. Walker and reported continued left buttock and leg pain, particularly with sitting (Tr. at 660). On examination, Claimant had full strength in her legs and "a little bit" of decreased sensation in a left L5 nerve root distribution (Tr. at 660). Dr. Walker prescribed Claimant a steroid, advised her to discontinue anti-inflammatory medication and take pain medication and muscle relaxants as needed (Tr. at 660).  On July 24, 2012, Claimant presented to Dr. Young and reported that her low back pain was better since surgery and she was off her pain medication (Tr. at 638).

However, on August 2, 2012, Claimant told Dr. Young that she had left leg pain and that her left foot dragged, felt cold/numb and she stumbled (Tr. at 637). Dr. Young did not note any back or extremity abnormality on examination and told Claimant to follow up with Dr. Walker. (*Id.*) When Claimant saw Dr. Walker on August 9, 2012, only one week later, she still had some pain but she reported improvement of her buttock and leg pain (Tr. at 652). Claimant thought she could go back to work part-time but was unsure if her employer had available part-time work. (*Id.*) On examination, Claimant had full strength in her legs and some decreased sensation at the L5 nerve root distribution. (*Id.*) Straight leg raise testing appeared negative. (*Id.*) Dr. Walker opined that Claimant should give the nerve time to recover. (*Id.*) He also advised her to increase her walking and said he would release her for part-time work. (*Id.*)

On September 7, 2012, Dr. Young noted that Claimant still had numbness and pain in the left leg, but it was better overall (Tr. at 636). Claimant had a new symptom of a painful left foot at times and her back pain worsened. (*Id.*) On examination, Claimant had a decreased range of motion due to pain and a limp. (*Id.*) Dr. Young recommended Claimant follow up with Dr. Walker. (*Id.*) Dr. Young also completed a medical source statement, in which she opined that Plaintiff was unable to sit or stand for more than 30 minutes at one time (Tr. at 633-635). She also stated that Claimant had an abnormal gait because her left leg dragged and her foot was numb which altered her ability to maintain balance (Tr. at 634).

Dr. Walker saw Claimant on September 20, 2012, and noted that Claimant's left buttock and leg pain limited her ability to stand for prolonged periods of time (Tr. at 650). On examination, Claimant had a positive straight leg raise, but full muscle strength and sensation in her legs. (*Id.*) Dr. Walker wrote "[t]here is nothing more to do from a surgical standpoint. She is planning to retire in six months, so she is applying for early retirement disability. I support

her in that decision. I will see her back in the office on an as-needed basis." (*Id.*)

On December 15, 2012, Rogelio Lim, M.D., a state agency physician, reviewed the available evidence and opined that Claimant retained the ability to perform a range of light work (Tr. at 176-178, 185-187). On March 25, 2013, Claimant saw Dr. Young for a medication refill and reported that she did not have medical insurance (Tr. at 698). Claimant described her left leg pain as "much better," but reported foot pain. (*Id.*) Dr. Young noted that Claimant had decreased sensation in both extremities. (*Id.*) On March 26, 2013, Subhash Gajendragadkar, M.D., also a state agency physician, reviewed record and agreed that Claimant could perform a range of light work (Tr. at 198-201).

On October 2, 2013, Claimant told Dr. Young that her pain had increased overall since surgery and that she cannot sit (Tr. at 697). Claimant had a prescription for Percocet, which she took as needed. (*Id.*) On examination, Dr. Young did not note any back or musculoskeletal abnormalities. (*Id.*)

On March 6, 2014, Claimant saw Dr. Young and reported low back pain over the last week (Tr. at 669). Dr. Young described Claimant's pain as "mild." (*Id.*) On May 6, 2014, Claimant did not complain of back pain and Dr. Young did not note any musculoskeletal or neurological abnormality on examination (Tr. at 669-670). On August 6, 2014, Claimant presented for treatment of shingles (Tr. at 703). Dr. Young did not note any abnormal musculoskeletal or neurological findings. (*Id.*) On September 28, 2014, Claimant returned and said that her legs throbbed like a toothache, that her feet felt painful, her back was sore but "ok" (Tr. at 702). On examination, Dr. Young noted no edema and normal distal pulses (2+). (*Id.*) Dr. Young advised Claimant to continue with Percocet and Elavil because she did not have medical insurance for other medications. (*Id.*)

7

In February 2015, Claimant complained of nasal drainage and constipation, not back pain (Tr. at 701). Dr. Young noted that Claimant had no edema in her extremities and did not note any abnormal musculoskeletal or neurological findings. (*Id.*)  Also, at the next visit on April 22, 2015, Claimant complained of a cracked and peeling nose, not back pain (Tr. at 700). She also reported that she obtained a medical card (Tr. at 700). On examination, Dr. Young noted that Claimant had no edema in her extremities and she did not note any abnormal musculoskeletal or neurological findings. (*Id.*)

On June 5, 2015, Claimant complained of low back pain around to the groin, but Dr. Young noted a history of colon and kidney trouble (Tr. at 700).  Dr. Young's physical examination stated that Claimant had no edema in her extremities and she did not note any abnormal musculoskeletal or neurological findings (Tr. at 699).

On July 28, 2015, Claimant reported a sore throat and did not complain of back pain. (*Id.*)  She did complain of left knee pain and had some tenderness on palpation and pain with flexion and weight bearing. (*Id.*)

On October 7, 2015, Claimant saw Dr. Young and did not report back or leg pain (Tr. at 773). As before, Dr. Young noted that Claimant had no edema in her extremities and did not note any abnormal musculoskeletal or neurological findings. (*Id.*)  Dr. Young diagnosed spinal stenosis and degenerative disc disease but did not include neuropathy in her diagnosis. (*Id.*)

On November 17, 2015, Dr. Young completed a medical source statement (Tr. at 780-784).  Dr. Young opined that Claimant's pain would constantly interfere with the attention and concentration needed to perform even simple tasks, that she could not work full-time and that she would likely miss more than four days of work per month (Tr. at 781, 784). Although she opined that Claimant could not walk even one block without rest or pain (Tr. at 781), she was

8

"unable to answer" whether Claimant had any limitation in sitting, standing or lifting or whether she would require unscheduled breaks or an assistive device such as a cane (Tr. at 781-783). She was also unable to answer whether Claimant had difficulty moving her head, performing postural activities, reaching, handling or fingering (Tr. at 783).

<u>Claimant's Testimony</u>

On July 9, 2014, Claimant testified that she was not working as of the date of the hearing and she last worked somewhere around the second half of 2012 (Tr. at 155). She stated that she had not gone back to work after her surgery, but she received sick leave and vacation pay when she terminated employment (Tr. at 156).

Claimant testified that the surgery was supposed to be for a pinched sciatic nerve, but during the surgery the doctor found that her sciatic nerve was crushed and could not be repaired (Tr. at 156-157). After the surgery, her doctor released her and told her there was nothing further he could do (Tr. at 156). She stated that her doctor told her that there was no point in going to physical therapy. He did not refer her to pain management because she had already been through pain management; she noted that at that time her pain had been going on for ten years (Tr. at 157). She stated that her surgeon told her to apply for disability benefits. (*Id.*)

Claimant testified that she took Percocet for her pain and that most of the time she lies down. She stated that she could not sit for a long period of time because her feet went numb and her legs hurt. (*Id.*) She stated that her family doctor, Dr. Young, prescribed her medication. (*Id.*) Claimant testified that she had started seeing Dr. Young in January 2012. Dr. Young had referred her to the surgeon who performed her surgery (Tr. at 158). She stated that she saw Dr. Young about every three months after her surgery (Tr. at 158-159).

Claimant stated that she could only sit for about fifteen minutes before her feet went

numb, on the left side was worse than the right (Tr. at 161). She stated that her left leg was completely numb all the way down to her feet, but only her feet were affected on the right side. (*Id.*)

Additionally, Claimant testified that in addition to Percocet she took two blood pressure medications, a thyroid pill, a pill to help her sleep, an antidepressant and a nerve pill to help with panic attacks (Tr. at 161-162). She stated that none of the medication helped with the numbness in her feet. She stated she could not tolerate Lyrica because "[I]t makes me crazy" and "I hallucinate off of it" (Tr. at 162). She also stated that the Percocet made her drowsy and that she didn't feel like doing anything, but she didn't really go to sleep. (*Id.*)

Claimant testified that the only thing that helped alleviate her pain was to lie down and that she laid down most of every day (Tr. at 163). She stated that she was down for at least six hours out of an eight hour day. (*Id.*) Claimant stated that she got "probably" eleven hours of sleep per night because she was taking a sleeping pill. (*Id.*) She stated that there were some nights when the pain was worse that the sleeping pill did not help. (*Id.*)

Claimant testified that her granddaughters did the dishes but if for some reason she did dishes, she did them sitting on a chair (Tr. at 163-164). She stated she also sat in a chair if she cooked (Tr. at 164). She stated that her granddaughters did most all of the chores, noting that they ran the sweeper, did laundry, took care of the dogs and did the dishes. (*Id.*) She stated that she did not go to the grocery store unless she was just going to get something and come right back out. (*Id.*) She said her oldest granddaughter did the grocery shopping. (*Id.*)

Claimant testified that she could drive a car, but not long distances. She stated that after forty-five minutes of driving she would have to stop due to pain in her back and down her legs (Tr. at 164).

Claimant testified that she was not working at the time of the hearing, having last worked in June 2012 when she left her job with the State Police (Tr. at 133). She testified that she applied for and received disability retirement through the State. (*Id.*)

Claimant testified that since the July 9, 2014 hearing, her pain level had worsened (Tr. at 134). She stated the back pain that bothered her most when she was standing and when she stood now she felt like she was "breaking in half." (*Id.*) She stated that most of her pain now was in the left leg and down into her foot, indicating that the balls of her feet felt like they had pads on them and her toes felt swollen. (*Id.*) She stated that if she laying down helped her back and leg pain, however, she still experienced pain in her feet. She noted that her left leg was her biggest problem as far as leg pain (Tr. at 135). She testified that she laid down most of the time (Tr. at 139).

Claimant testified that sitting and doing her past job would be difficult because of the throbbing in her left knee and down her leg (Tr. at 135). When she worked, she got up and would stand against a wall and raise her left leg and try to work some of the pain and spasm out of it. (*Id.*)

Claimant stated that when she had muscle spasms, she massaged them and also laid on her left side with a pillow between her legs. She stated that she could not lay on her right side. (*Id.*) She stated that as a last resort she used a Valium to help with the muscle spasms. She stated that the Valium was originally prescribed to her for panic attacks, but her doctor knew she was taking them for muscle spasms. (*Id.*) She testified that she used the Valium about two times a week, depending on how active she had been, noting that if she was active "the least little bit" she had trouble with spasms from her shoulder blades all the way down her leg (Tr. at 136-137).

Claimant testified that her physician, Dr. Young, had advised her to get a cane because she stumbled a lot and her feet dragged (Tr. at 137). She stated that she used the cane primarily in her right dominant hand but she might switch to the left hand depending on which foot was bothering her. (*Id.*)

Claimant testified that the pain she had interfered with her ability to concentrate, pay attention and stay on task even before she stopped working (Tr. at 137). She explained that when she had to get up out of her seat to stand and work the spasms out of her leg, she was not working. (*Id.*) She stated that she had to do that several times per day, but her supervisor was understanding and never wrote her up for that (Tr. at 137-138). She stated that since her surgery the pain was worse now and stated that if she could go back and have the surgery again she would not do so (Tr. at 138). She stated that any money she received due to being disabled would never make up for the pain she was in (Tr. at 139). She noted that she had asked her doctor on several occasions if there was anything else that could be done surgically and her doctor had told her that there was not nothing that could be done. (*Id.*)

Claimant testified that her dream had been to retire and travel and now she could not travel and was "basically stationary at home" (Tr. at 138). She stated that a friend she had known since she was ten years old had recently moved in with her so she could help her (Tr. at 138-139).

Claimant testified that her condition worsened after her surgery instead of improving and she now has problems in both of her legs and previously just her left leg bothered her (Tr. at 142).

<u>Vocational Expert's Testimony</u>

At the hearing on December 1, 2015, Patricia Posey, the vocational expert (VE), testified

12

that an individual with the same age, education and work background as Claimant, who was limited to sedentary work but who could never climb ladders, ropes or scaffolds; who could perform other postural activities only occasionally except that she could not crouch or crawl; who could frequently operate foot controls with both lower extremities; who could have no direct exposure to vibrations, no work at unprotected heights, and no concentrated exposure to extreme cold; could perform Claimant's past work as a data entry clerk, a secretary, or a dispatcher (Tr. at 165-166).

VE Posey testified that if the individual was also required to take unscheduled breaks during the workday over and above the scheduled breaks and that the unscheduled breaks would be expected to last approximately one hour per day in order to lie down or elevate feet or other activities that would take her off task, the individual could not perform any of Claimant's past work (Tr. at 166). VE Posey testified that the individual also could not perform any other work that existed in the national economy (Tr. at 166-167).

At the hearing on December 1, 2015, VE Patricia McFann, testified that Claimant's past work history consisted of working as a lab tech at a water plant for two years, a job which was light and skilled (Tr. at 143). She stated that Claimant worked as a secretary/dispatcher for the city police, describing the secretary component of the job as sedentary, skilled work and the dispatcher part of the job as sedentary semi-skilled work. (*Id.*)  VE McFann stated that Claimant's last job was as a data entry clerk which was sedentary and semi-skilled work (Tr. at 143).

VE McFann testified that an individual with the same age, education and work background as Claimant, who was limited to sedentary work but who was unable to climb ladders, ropes or scaffolds; whose other postural activities were limited to occasional; who was

limited to frequent operation of foot controls with both lower extremities; who should have no exposure to vibrations, no work at unprotected heights and no more than occasional exposure to extreme cold; could perform Claimant's past work as a data entry clerk, a secretary or a dispatcher (Tr. at 144).

VE McFann testified that if the individual also required a cane for ambulation and should avoid walking on uneven surfaces, the individual would still be able to perform Claimant's past jobs (Tr. at 144-145).

VE McFann testified that if the individual needed to alternate between sitting or standing approximately every 15 to 20 minutes, the individual could not perform Claimant's past work (Tr. at 145). VE McFann further testified that Claimant would have no skills that would transfer from her past work into a job that could be performed under that hypothetical. (*Id.*)

VE McFann testified that if the individual described in the first or second hypothetical would be limited to performing basic two and three step tasks only, the individual would be unable to perform Claimant's past work and would be limited to unskilled work. (*Id.*)

<u>Weight Afforded Medical Opinions</u>

Social Security Ruling 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become

weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id.*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*)  Examples of the kinds of factors that

an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[2] of §§ 404.1527 and 416.927.

<u>Discussion</u>

The ALJ gave the opinion of Claimant's treating physician, Dr. Young, little weight. The ALJ found Dr. Young's opinion inconsistent with the evidence of record. The evidence of record contained four medical source consisting of the following: The opinion of Claimant's treating orthopedic surgeon, Dr. Walker, that Claimant could not perform prolonged standing; Two state agency physicians that opined that Claimant could perform light exertional work; and Dr. Young's opinion that Claimant could not work full-time.

According to the Fourth Circuit, "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). In other words, "[a] claimant has a severe impairment if an impairment or combination of impairments significantly limits his physical or mental ability to perform basic work activities." **Monroe v. Colvin**, 826 F.3d 176, 184 n.8 (4th Cir. 2016). In the present case, Claimant's treating physician's **a medical source statement is not** reinforced by the evidence of record. The state agency physicians' opinions stating that Claimant could perform light exertional work is reinforced by the evidence of record.

More so, the ALJ gave Claimant the benefit of the doubt and found that she could perform sedentary exertional level work instead of light work as opined by the two state agency physicians. Sedentary work does not require prolonged standing. This exertional level coincides with

---

[2] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R. 416.927(c) and 404.1527.

Claimant's treating orthopedic surgeon's opinion that Claimant cannot perform work that requires prolonged standing. Therefore, the ALJ's finding of no severe impairment is supported by substantial evidence.

<u>Credibility</u>

Claimant asserts that the ALJ incorrectly evaluated Claimant's credibility, therefore, the decision is unsupported by substantial evidence (ECF No. 14-1). Claimant argues:

> An ALJ must make a credibility determination based upon all the evidence in the record. When an ALJ does not credit a claimant's testimony about pain or other subjective symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). *See also* SSR 16-3p and 20 C.F.R. §§ 404.1529 and 416.929. Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden v. Weinberger*, 493 F.2d 1002, 1110 (4th Cir. 1974) ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").
>
> An ALJ is required to evaluate seven factors in determining credibility pursuant to 20 C.F.R. §§ 404.1529 and 416.929: the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms (Italics supplied). *See also* SSR 16-3p, *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).
>
> To "determin[e] the extent to which . . . symptoms, such as pain,

affect [the Plaintiff's] capacity to perform basic work activities," an ALJ must "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence," which includes medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). An ALJ may not reject a claimant's allegations of intensity/persistence solely because the available objective medical evidence does not substantiate the allegations, but the lack of objective medical evidence may be one factor considered. SSR 16-3p.

SSR 16-3p states the manner in which a claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms are to be evaluated by an ALJ. It emphasizes that the consistency of a claimant's statements should be considered in determining whether a claimant's reported symptoms affect her ability to perform work-related activities. It also stresses that the longitudinal medical record is a valuable indicator of the extent to which a claimant's reported symptoms will reduce his or her capacity to perform work-related activities. It states that:

> [I]t is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms. SSR 06-3p.

In this case, Bradley alleged disability due to significant limitations created by severe pain in several parts of her body. Bradley gave testimony that did not vary regarding her limitations in two separate hearings. She completed a Pain Questionnaire and a Function Report outlining her symptoms, limitations, and daily activities, shortly after she filed her claims. (Tr. at 429-433, 434-441). She consistently complained of pain to her treating physicians (Tr. at 654-659, 660, 652, 637, 650, 698, 697, 668, 702, 701) Bradley's testimony, the statements made on the forms she completed early in the claims process, and her consistent contemporaneous

statements to her treating physician were all consistent with one
another. The location and description of her pain did not vary; the
way she described her limitations due to pain did not vary. (ECF No.
14-1).

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial
evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which
evidence the ALJ found credible and why, and specific application of the pertinent legal
requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). In
making a credibility determination, the ALJ must follow a two-step analysis. "First, there must be
objective medical evidence showing the existence of a medical impairment." *Craig v. Chater*, 76
F.3d 585, 594 (4th Cir. 1996). Second, the ALJ must consider "the intensity and persistence of the
claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595.

The ALJ here followed this two-step analysis. At step one, the ALJ determined that "the
claimant's medically determinable impairments could have been reasonably expected to produce
the alleged symptoms" (Tr. at 113). Thus, the ALJ proceeded to step two and determined that "the
claimant's statements concerning the intensity, persistence and limiting effects of these symptoms
are not entirely credible. . . ." (*Id.*)

The ALJ noted that Claimant continued to report some back and lower extremity pain, she
did report some improvement overall (Tr. at 113-114). For example:

- In 2012, Claimant told Dr. Young that her low back pain was better since surgery
  (Tr. at 638); Claimant told Dr. Walker that she still had some pain, but had
  improvement of her buttock and leg pain (Tr. at 652); and Dr. Young noted that
  Claimant still had numbness and pain in the left leg, but it was overall better (Tr.
  at 636).

- In 2013, Claimant reported that her left leg pain was "much better" but she had
  foot pain (Tr. at 698).

- In 2014, Claimant did not complain of back, leg, or foot pain at two visits (Tr. at
  669-670, 703), and while Plaintiff reported leg and foot pain at another visit, she

said her back was okay (Tr. at 702).

- In 2015, Claimant did not complain of back pain at four out of five visits (699-701, 773), and the one time she did report back pain, it was thought to be related to another medical issue unrelated to her back (Tr. at 700).

Therefore, the ALJ acknowledged that although Claimant experienced some residual pain, Claimant also experienced improvement overall following sciatic nerve surgery.

Likewise, the record supports the ALJ's finding that Claimant did not have an altered balance affecting her ability to walk (Tr. at 114). Although Dr. Young stated in September 2012 that Claimant had an altered balance due to her left leg dragging and numbness in her foot, the ALJ noted that Dr. Walker, an orthopedic specialist, also saw Claimant in September 2012 and did not note any such difficulties (Tr. at 114, 634, 650). Likewise, treatment records for non-related conditions do not depict that Claimant had an altered gain or difficulty balancing (Tr. at 685-87, 739-744).

Claimant argues that the ALJ here failed to consider the seven factors in determining credibility. The undersigned is unpersuaded by Claimant's argument because "[t]here is no requirement that [the ALJ] state specific findings as to each factor" as the Claimant suggests. *Wolfe v. Colvin*, No. 3:14-CV-4, 2015 WL 401013, at *4 (N.D.W. Va. Jan. 28, 2015).

<u>Conclusion</u>

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving

disability within the meaning of the Act.  *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 16), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 17), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   August 22, 2018

Dwane L. Tinsley
United States Magistrate Judge

21